MR. OLSON: No, your Honor. Oh, just one thing. This morning I had asked for those police reports with respect to these -- Alana Brown, her prior arrests and incidents where she has maintained that she was a victim, which I believe some of those are false accusations. I can't remember what your ruling was. I thought that you said that those should be provided to me.

THE COURT: I ordered that the NCIC records of arrests be provided. You're seeking police records --

MR. OLSON: I had subpoenaed from the police department, the Red Lake -- that's why I was wondering -- I was understanding that a Red Lake police officer was going to appear with the records I subpoenaed relating to at least four incidents where Alana Brown was arrested and charged with criminal complaints. A couple of them are thefts and one of them was a first degree assault, another was a terroristic threat. There is at least four and there may have been another one on a subpoena. And I'd also asked for the jail log activity records relating to the comings of goings of her in and out of the Red Lake Jail and police reports where she filed accusations against other people. I mean, I don't know. I guess apparently nobody from Red Lake has shown up with those police reports. I thought that -- my understanding is -- and I talked with somebody last week -- that somebody was going to bring them down here.

SCANNED
JUL 06 2005
U.S. DISTRICT COURT ST. PAUL

THE COURT: Mr. Wardlaw, what do you know about the status of the Red Lake files as they relate to criminal charges or allegations made by Ms. Brown?

MR. WARDLAW: That I don't know anything about. I got calls from Red Lake officers wanting assistance arranging transportation to come down here and at that point I hadn't subpoenaed them, so I didn't know what they were talking about. Then they informed me they were subpoenaed by Mr. Olson. At that point I told them that you have to contact Mr. Olson about the status of the subpoena because it wasn't my subpoena. I did receive a phone call from Mr. Olson requesting police reports and so last night I had Red Lake fax down the police reports. It was my understanding that it was about this case and so I collected the police reports and then turned them over -- faxed them to Mr. Olson.

Now that I understand what exactly he's asking for, first of all, reports are not discoverable under Rule 16.

Secondly, the officers who contacted me informed me that they had been told that you're going to get a day or two notice when you have to appear. So I don't want to get involved in defense subpoenaed witnesses. If he wants records -- I did what I thought he was asking for. It turns out it's not, but what I can do is, I do have her tribal record here and can fax a copy of her tribal record over there. I do not have any of those reports --

THE COURT: Give him the tribal record so he's got what you've got.

I'm not sure, Mr. Olson, that you're entitled to police reports on file in other cases unrelated to this. I'm going to require a showing of the relevance or probative value of those, but I think at this point we're feeling through the blanket trying to get what the various charges are. Let's get the charges -- what the nature of her past record has been and we'll go from there.

MR. OLSON: Just to clarify and then I'll sit down.

I have a copy of her tribal record. Based on her tribal record, I made specific requests citing case reference numbers. It was provided ten days ago to the Red Lake Police Department, a subpoena duces tecum asking them to bring those reports, specifying the reports, specifying the jail log activities, specifying the other cases that she was a complaining witness in. I have had conversations with about -- everybody I subpoenaed, because I put them under subpoena, have called me and I have told a number of those people that I subpoenaed that they don't have to come down unless I give them notice, except that a custodian of records has to be here today with those police reports. So that's what I did. I thought it was the appropriate thing. And they told me -- I thought that Mr. Wardlaw was verifying that. I see that he