# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 04-1807

| | | |
|---|---|---|
| United States of America, | * | CR 02-75 ADM/RLE |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Robert George Head, Jr., | * | |
| | * | |
| Appellant. | * | |

Submitted: November 19, 2004
Filed: May 13, 2005

Before WOLLMAN and HEANEY, Circuit Judges, and HOLMES,[1] District Judge.

WOLLMAN, Circuit Judge.

Robert George Head, Jr., appeals from his conviction and sentence on two counts of aggravated assault, violations of 18 U.S.C. §§ 2, 113(a)(3), 1151, and 1153(a), and one count of brandishing a firearm during a crime of violence, a violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii). We affirm.

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, sitting by designation.

SCANNED
NOV 03 2005
U.S. DISTRICT COURT ST. PAUL

I.

Early on the morning of January 19, 2002, Head was smoking crack cocaine at the home of his then-girlfriend, Patricia Mountain. Also present and smoking crack cocaine were Kevin Boland, Alejandro Garcia, and Alana Brown, Head's daughter. At some point, Head and Brown departed. Sometime thereafter, Garcia and Mountain departed in Garcia's car. Head and Brown met up with Jeffrey Dolson and Arlen Rice, and the four of them, riding in Head's truck, encountered Garcia's car. Head began following Garcia around the reservation and at one point rammed Garcia's car with his truck and told Garcia that he was going to kill him. Head and the others in his truck then returned to Mountain's residence, where Head kicked in the door. He approached Boland and held a pistol to his head, demanding money and drugs. Head, Dolson, and Brown then assaulted Boland and departed. Garcia eventually returned to Mountain's residence and discovered the injured Boland. Shortly thereafter, Head and others returned, and Garcia and Boland fled on foot. Head chased and caught Garcia and then assaulted him. The assault ended when a police officer arrived on the scene.

Head was arrested on tribal charges by the Red Lake Tribal Police Department later that morning. He was questioned by F.B.I. Special Agent John Egelhof at the Red Lake Tribal Jail. Agent Egelhof stated that he wanted to talk with Head about what had occurred earlier that morning. After informing Head that he had not been charged with a federal offense and that he was only incarcerated under tribal charges, Agent Egelhof again stated that he wanted to talk with Head about what had happened that morning. Head responded that he did not know why he was in custody, that he had "only been involved in capturing and holding a drug dealer, Alex Garcia, for the police" and that Garcia had tried to kidnap his daughter. April 2, 2002, Tr. at 4. The district court denied Head's pre-trial motion to suppress this statement.

Head pled guilty to one count of aggravated assault but subsequently withdrew his plea following our decision in United States v. Robert George Head, Jr., 340 F.3d

628 (8th Cir. 2003). Head then moved to exclude any evidence that referred to the fact that he had previously pled guilty to one of the counts of the indictment. The district court[2] refused to rule on the admissibility of such evidence until after Head testified. Head did not object to this decision and ultimately elected not to testify.

At trial, the prosecution called Alana Brown, who testified about what she remembered from the events that led to the charges against Head. The defense called Head's wife, Mary, who testified outside of the presence of the jury that Brown had told her that Brown did not remember what had happened. The prosecution objected that Mary Head's testimony was hearsay. The district court excluded the testimony after concluding that it had no probative value.

Following Head's conviction, the district court sentenced him to concurrent 120-month terms for each of the aggravated assaults and a mandatory consecutive term of 84 months for brandishing a firearm during a crime of violence. The sentence reflected a two-level increase for leadership in the commission of a crime and a two-level increase for obstruction of justice.

Head challenges the district court's denial of his motions to exclude the statements he made to Agent Egelhof and the evidence relating to the previously entered guilty plea. He also asserts that the district court improperly disallowed Mary Head's rebuttal testimony. Finally, he challenges the district court's sentencing enhancements based on facts not found by a jury beyond a reasonable doubt.[3]

---

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[3]We deny Head's November 1, 2004, *pro se* supplemental motion, which raises myriad other challenges.

II.

We first address the district court's denial of Head's motion to suppress the statement made to Agent Egelhof. We examine factual findings for clear error and conclusions of law *de novo*. United States v Mendoza-Gonzalez, 363 F.3d 788, 795 (8th Cir. 2004).

The requirements of Miranda are triggered only when a defendant is both in custody and being interrogated. United States v. Boyd, 180 F.3d 967, 976 (8th Cir. 1999). Interrogation includes not only express questioning by law enforcement officers, but also words or actions that officers should know are reasonably likely to elicit an incriminating response from a suspect. Mendoza-Gonzalez, 363 F.3d at 795 (citing Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980)). A statement made by a suspect that is voluntary and not in response to interrogation is admissible with or without the giving of Miranda warnings. Boyd, 180 F.3d at 977.

The circumstances here are not unlike those in Mendoza-Gonzalez, 363 F.3d 788. In that case, a suspect who had been placed in handcuffs but was not under arrest asked an officer if he could make a phone call. When the officer inquired why the suspect wanted to make the call, the suspect replied: "I am going to jail." Id. at 792. In upholding the district court's denial of the suspect's motion to suppress that statement, we held that the officer could not reasonably have expected the suspect to make an incriminating statement in response to his question. Id. at 795. Similarly, Agent Egelhof had no reason to know that informing Head that he wanted "to talk to him about what had occurred that morning" would elicit an incriminating response. Accordingly, although Head was in custody, Agent Egelhof's statement to him did not constitute an interrogation. In any event, even if we were to conclude that the denial of the suppression motion was improper, the error is harmless in light of the overwhelming evidence of Head's guilt. See United States v. Moore, 872 F.2d 251, 252 (8th Cir. 1989).

## III.

We next consider the district court's deferral of Head's motion to exclude evidence pertaining to his prior guilty plea. In United States v. Luce, the Supreme Court held that a defendant must testify in order to raise and preserve for review a claim of improper impeachment with a prior conviction. 469 U.S. 38, 43 (1984). When the defendant does not testify, a reviewing court "has no way of knowing whether the government would have sought to impeach with the prior conviction." Id. at 42. Without the defendant's testimony, "it would be a matter of conjecture whether the District Court would have allowed the Government to attack [the defendant's] credibility at trial by means of a prior conviction." Id. The Luce rationale applies with equal force to a claim of improper impeachment with a previous guilty plea, particularly where, as here, the district court deferred its ruling on Head's motion. Having elected not to testify, Head may not now contend that he was prejudiced by the district court's deferral of the ruling.

## IV.

Head contests the district court's exclusion of Mary Head's testimony. We review the district court's determination of the admissibility of evidence for abuse of discretion. United States v. Roulette, 75 F.3d 418, 423 (8th Cir. 1996). Although under certain circumstances a party may introduce extrinsic evidence of a witness's prior inconsistent statement, Fed. R. Evid. 613(b), relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Alana Brown testified on direct examination that she drank beer and smoked crack on the day in question. On cross-examination, Brown admitted that she had consumed between six and eight cans of beer. When asked on cross-examination whether she was "pretty intoxicated," Brown responded: "Not really, I wouldn't consider myself intoxicated. I drank, like, maybe six, seven beers, but I still knew

what was going on." March 17, 2004, Tr. at 81. She also stated that "even if I was [intoxicated], I still remember what all happened." Id. at 83. At other points in her testimony, however, Brown stated that she could not remember certain details about the evening.

Mary Head testified outside the presence of the jury that Brown had told her that she had consumed twelve rather than eight cans of beer and that "she couldn't really remember . . . a lot of the things that the investigators were telling her about the other people's statements [regarding the events of the night in question]." March 18, 2004, Tr. at 140-41. The only disparities in Brown's testimony that Mary Head's testimony suggested were the number of beers that Brown had consumed and the extent to which Brown was able to remember the events that transpired that night.

The district court concluded that Mary Head's testimony had no probative value and that Brown "was clear and candid on the witness stand that she doesn't have a very good memory of it, parts of it." Id. at 141. To the extent that Mary Head's testimony would have had any probative value, we conclude that it would have been largely cumulative of Brown's own testimony and thus would not have substantially impacted the jury's verdict. Accordingly, any error in excluding it was harmless.

## V.

Head's reply brief challenges two sentencing enhancements based on facts not found by a jury beyond a reasonable doubt: a two-level increase for leadership in the commission of a crime, and a two-level increase for obstruction of justice. We address these challenges in light of United States v. Booker, 125 S. Ct. 738 (2005), and United States v. Pirani, No. 03-2871 (8th Cir. April 29, 2005) (en banc). Because Head did not raise constitutional challenges to the enhancements at sentencing, we review for plain error. Pirani, slip op. at 6.

In order to resolve Head's challenges to his sentence, we conduct plain error review under the four-part test of United States v. Olano, 507 U.S. 725 (1993). Pursuant to that test, before we can correct an error not raised at trial, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights. Johnson v. United States, 520 U.S. 461, 466-67 (1997). If all three conditions are met, we may remedy the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

The district court's enhancements for leadership and for obstruction of justice were erroneous in light of Booker. In these circumstances, the first two Olano factors are satisfied. See Pirani, slip op. at 8. Whether the error affected Head's substantial rights is another matter. To satisfy this factor, "the defendant must show a 'reasonable probability,' based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." Id. at 11.

Absent the enhancements, Head would have faced a base offense level of 23 and a sentencing range of 84-105 months for his convictions on the two counts of aggravated assault.[4] The four-level adjustment to a base offense level of 27 resulted in a range of 120-150 months. The district court sentenced Head to 120 months. Although the district court sentenced Head to the low end of the sentencing range, nothing in the record suggests a reasonable probability that Head would have received a more favorable sentence had the district court been operating within a range of 84-105 months. Cf. Pirani, slip op. at 12 ("[S]entencing at the bottom of the range is the norm for many judges, so it is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the Booker error."). In fact, the district court contemplated sentencing Head to

---

[4]As indicated above, Head's sentence also included a mandatory consecutive term of 84 months stemming from his conviction for brandishing a firearm during a crime of violence. The sentencing enhancements have no effect on this portion of Head's sentence.

consecutive 120-month terms for the aggravated assault convictions, but ultimately concluded that concurrent sentences were appropriate given Head's age.[5] We conclude that, given these circumstances, Head has not demonstrated prejudicial plain error under Olano.

The judgment and sentence are affirmed.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

[5]The district court commented to Head at sentencing that "[a]lthough there's much of your conduct both before the charges in this case and since which is aggravating and could be the basis for a consecutive time imposed more than this or at a different point in the guidelines, I find that under the circumstances, given your age, 204 months [120 months for the aggravated assault convictions and 84 months for the conviction for brandishing a firearm] is a very long sentence and is sufficient to comply with society's need for punishment as it relates to this offense and particularly the conduct you've engaged in since the time of your arrest." Sen. Tr. at 22.