**H**
Briefs and Other Related Documents
U.S. v. MazzaE.D.Pa.,1999.Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
**UNITED STATES** of America
v.
Mark MAZZA and Thomas Mazza.
**Nos. CRIM. A. 98-113-1, 98-113-2.**

Dec. 20, 1999.

*MEMORANDUM AND ORDER*

SHAPIRO.

*1 Defendants Mark Mazza ("Mark") and Thomas Mazza ("Thomas") FN1 are brothers. Mark and Thomas were each charged with bank fraud in violation of 18 U.S.C. § 1344 (Count I); Thomas was charged as an aider and abettor under 18 U.S.C. § 2 on the bank fraud count (Count I). Mark was charged with mailing a threatening communication with the intent to physically injure his ex-wife, Donna Reitelbach (Count II). Thomas was charged with mailing a threatening communication with the intent to physically injure Ms. Reitelbach's divorce attorney, Linda MacElree and the attorney's husband, Judge James P. MacElree (Count III). Mark and Thomas were each charged with mailing a threatening communication with the intent to injure the reputation of another in violation of 18 U.S.C. § 876 (Count IV). Mark and Thomas were also charged with one count of forfeiture later withdrawn. Mark and Thomas were both convicted on the counts of bank fraud (Count I) and mailing threatening communication with the intent to injure the reputation of another (Count IV), but both were acquitted of mailing threatening communications with the intent to physically injure another (Count II and Count III). Mark and Thomas filed timely post-trial motions for acquittal or a new trial; their post-trial motions will be denied.

FN1. Because the two defendants share a common surname, the court refers to them by their first names for clarification; the court intends no disrespect to the Messrs. Mazza in doing so.

BACKGROUND

Mark's wife, the former Donna Reitelbach (" Reitelbach"), left the marital home on February 3, 1994. Mark then made a series of harassing telephone calls and took possession of the automobile she drove.

When Reitelbach left Mark, she withdrew half the balance of their joint bank account at PNC Bank ($75,000), on the advice of her attorney. She deposited the funds in a new account in her name only at the same bank. The next day, Mark secured a blank counter check for Reitelbach's account by falsely representing to the bank teller that he was entitled to the funds in the account. Almost two weeks later, that counter check, then made payable to Thomas in the amount of $60,000.00, was deposited by Thomas in his bank account at CoreStates Bank; Reitelbach's signature was forged. Mark initially admitted the forgery to a bank investigator but later retracted this statement. At trial, Thomas testified that he found the blank counter check and completed it himself.

Later that year, Reitelbach received in the mail a picture of her deceased father in his casket with " Your next!" [sic] written in the margin. Reitelbach's divorce attorney, Linda MacElree, received a letter dated December 11, 1995 from Thomas; he demanded payment for expenses purportedly incurred by the marital estate. The letter included a " blind P.S.":

This is a warning to you and your husband to cease and desist at once the blacklist campaign and smear tactics you're engaging in against the reputation of Mark Mazza. Overwelming [sic] documentation in my possession supports and confirms this. Please be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

advised if you continue in these underhanded activities, this will have far reaching consequences to both you and Mr. MacElree. Under the law, the punishment will be swift and severe. Right now hanging by a thread is your standing in the legal community and also in the community at large.
***2** Do you want this black cloud over your head? If you value the security you now have and do not want to jeopardize it, then back off. Remember if you are setting your sights on destroying an individual in this divorce case, the back you stab may well be your own and your husband. [sic]

Government Exhibit 53.

Based on these events, Mark and Thomas were indicted and convicted.

DISCUSSION

Mark and Thomas have timely moved for Judgment of Acquittal under Federal Rule of Criminal Procedure 29(c) [FN2] or, in the alternative, for a new trial under Federal Rule of Criminal Procedure 33.[FN3]

FN2. Rule 29(c) provides, in pertinent part: "[i]f the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal."

FN3. Rule 33 provides "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice."

I. Count I (Bank Fraud)

Mark seeks acquittal on Count I because presentation of a single forged check to a bank is not bank fraud under 18 U.S.C. § 1344.[FN4] The case he primarily relies on, *Williams v. United States,* 458 U.S. 279, 284-85, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), held that the presentation of a check dishonored for insufficient funds is not bank fraud because a check is not a false assertion. Williams, a bank president, used his bank's general overdraft account to draw funds in excess of his account balance. When bank examiners conducted an audit, petitioner deposited to his account an insufficiently funded check from another bank to hide his overdrawn balance. Williams was charged with check kiting under 18 U.S.C. § 1014, making it a crime knowingly to make a false statement in a banking transaction. The Supreme Court held that since a check is not a statement, it cannot be a " false statement," and Williams did not make a false statement that there were sufficient funds to cover a check presented for payment. Here, Mark presented a check for payment on an account having sufficient funds, but he misrepresented that he was entitled to payment.

FN4. Thomas did not join in Mark's arguments on Count I, but joined in Mark's arguments regarding Count IV and misjoinder. Mark joined in all the arguments proffered by Thomas in his post-trial motions.

*Williams* is not controlling because here the government presented more than Mark's signature on a check as evidence of false pretenses. The government presented evidence that: Mark obtained a blank counter check on Reitelbach's account by falsely representing to the PNC bank teller that he was authorized to draw funds on her account; Mark made the check payable in the amount of $60,000.00 to Thomas, without authorization, and forged Reitelbach's signature on the check; and Thomas then presented the forged check for deposit to Thomas's account and transferred the funds to an account of his parents. Statutory bank fraud makes criminal any knowing scheme to obtain property in the custody of a financial institution by false pretenses. *See* 18 U.S.C. § 1344. The government presented sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, that Mark

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

directed the commission of a scheme to obtain property in the custody of a bank by false pretenses, in violation of 18 U.S.C. § 1344. A judgment of acquittal on Count I is not required by law.

Mark argues in the alternative for a new trial on Count I because the court's jury instructions were in error.[FN5] Mark, again in reliance on *Williams* and other cases [FN6] involving checks presented against insufficient funds, contends that presentation of a single "bad" check cannot comprise a "scheme" within the meaning of 18 U.S.C. § 1344. These cases do not apply because this forged check was presented against sufficient funds; Mark and Thomas engaged in a scheme to obtain money from Reitelbach's bank account and hide it in other accounts by material misrepresentations including a forged signature. There was more evidence than the single presentation of a check with a forged signature. The court did not commit plain error in not instructing the jury that knowingly presenting a single forged check to obtain someone else's money in bank custody could not constitute a fraudulent scheme. Mark is not entitled to a new trial on Count I.

FN5. Mark did not object to the jury instructions as given, so he may challenge the instructions now only if they were " plain error." *See United States v. Anderson,* 859 F.2d 1171, 1175 (3d Cir.1988).

FN6. Mark cites *United States v. Rafsky,* 803 F.2d 105 (3d Cir.1986); *United States v. Frankel,* 721 F.2d 917 (3d Cir.1983); and *United States v. Schwartz,* 899 F.2d 243 (3d Cir.1990) to support his plain error argument.

II. Count IV (Threats to Injure Reputation)

***3** Mark and Thomas seek acquittal on Count IV because: 1) the letter of December 11, 1995 was insufficient to establish an extortionate intent; 2) there was insufficient evidence of intent to injure the reputations of Linda MacElree and Judge MacElree; and 3) there was insufficient evidence to prove the specific extortionate threat of the indictment. Mark also argues for acquittal on the ground there was insufficient evidence that he aided and abetted the final draft of Thomas's December 11, 1995 letter to Linda MacElree.

In determining whether there was sufficient evidence to support the jury's verdict, the issue is whether, viewing all evidence in the light most favorable to the Government, a reasonable jury could have found guilt beyond a reasonable doubt. *See United States v. Zwick,* No. 98-3641, 1999 WL 1201443, at *13 (3d Cir. Dec.15, 1999) ("[The court does] not weigh the evidence or determine the credibility of the witnesses[; it views] the evidence in the light most favorable to the government, [and sustains] the verdict if any rational trier of fact could have found the essential elements ... beyond a reasonable doubt."); *United States v. Giampa,* 758 F.2d 928, 934-35 (3d Cir.1985).

Mark and Thomas challenge the sufficiency of evidence of an extortionate threat. The indictment alleges defendants intended to extort money from Reitelbach by threatening the reputation of her divorce lawyer and her lawyer's husband, an elected state judge. In addition to the December 11, 1995 letter, Thomas testified that Reitelbach should pay her share of the expenses of the marital home (N.T. 10/22/98 at 21), even though some of the claimed expenses were "bogus" (*Id.* at 93), and he wanted Linda MacElree to "back off" and "use [her and her husband's] influence [to assist Mark in his] divorce case." (*Id.* at 27-28). From all the evidence, a reasonable jury could have found, beyond a reasonable doubt, that Mark and Thomas threatened to injure the reputations of Linda MacElree and Judge MacElree with the intent to extort money from Reitelbach.

Mark and Thomas argue that the December 11, 1995 letter was too ambiguous to constitute a threat under 18 U.S.C. § 876.[FN7] Defendants rely primarily on *United States v. Barcley,* 452 F.2d 930 (8th Cir.1971), where the court held extrinsic evidence was required in § 876 prosecutions involving ambiguous, non-extortive threats of injury; an "ambiguous" threat was defined as a communication equally susceptible of two interpretations. *Id.* at 933.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN7. 18 U.S.C. § 876 provides: " Whoever, with intent to extort from any person any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid [knowingly deposits in any post office or authorized depository for mail], any communication, with or without a name or designating mark subscribed thereto, addressed to any other person and *containing any threat to injure the property or reputation of the addressee* or of another, or the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both." (emphasis added).

*Barcley,* a prisoner, wrote his attorney a letter stating his dissatisfaction with counsel's services and asserting that "as soon as I can get this case situ ated around in the position I want [sic] you are the first S.O.B. that will go ..." *Id.* at 932. The court found this statement was susceptible to a number of plausible interpretations,[FN8] with no extortionate threats, so extrinsic evidence was necessary for the government to meet its burden of proving the recipient was in fear of injury. *Id.* at 933.

FN8. For example, the prisoner may have intended to file a complaint against his attorney seeking to have him disbarred for unethical conduct. *See id.* at 933.

*4 Here, Thomas made explicit unambiguous extortionate threats in his letter to Linda McElree; extrinsic evidence of their threatening meaning was not required. *See United States v. Prochaska,* 222 F.2d 1 (7th Cir.1955) (where extortionate threat sufficient on its face, government need not produce extrinsic evidence of fear of injury). The government was not required to present extrinsic evidence of Linda MacElree's fear of harm but did so. Linda MacElree testified that she was frightened by the receipt of the December 11, 1995 letter and perceived it as a threat.

Defendants also attempt to argue that conviction under 18 U.S.C. § 876 requires proof of the good reputation of the intended victim(s). The statute imposes no such requirement.

In the alternative, Mark requests a new trial on Count IV because the court's instructions on " objective" threats and aiding and abetting were plainly in error. Mark and Thomas, relying on *United States v. Wilkes,* 685 F.2d 135 (5th Cir.1982) , argue the court erred in failing to instruct the jury that a conviction under 18 U.S.C. § 876 required a finding of willfulness. Wilkes was convicted of mailing threatening communications to collect bad checks and overdue bills. The court affirmed a judge's instruction defining "willful" as " incorporating a 'bad purpose either to disobey or to disregard the law,' " in an 18 U.S.C. § 876 wrongful threat jury charge. *Id.* at 138. The *Wilkes* court did not hold willfulness was required under § 876. The statute does not require willfulness; it requires that the defendant "knowingly" deposit a threatening communication in the United States mail, and the court so instructed the jury.

Mark also raises two arguments regarding his conviction as an aider and abettor in Count IV: 1) there was insufficient evidence that he had the specific intent to commit the crime charged; and 2) the court erred in failing to instruct the jury that willfulness is required to sustain an aiding and abetting conviction.

Under 18 U.S.C. § 2(a), the government must prove, beyond a reasonable doubt, that Mark " associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his actions to make it succeed." *United States v. Cades,* 495 F.2d 1166, 1168 (3d Cir.1974) (internal quotation marks omitted). A reasonable jury could have found from the evidence that Mark aided and abetted the mailing of the December 11, 1995 letter: he edited an earlier version of the letter containing a threat, the letter benefitted him directly, and it contained legal terminology that Mark, not Thomas, would have used. A reasonable jury could have concluded Thomas's testimony that he alone sent the threatening letter was not credible; evidence that Thomas was somewhat intellectually and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

emotionally impaired might have lead jurors to infer that he was incapable of acting alone.

Mark contends the court erred in failing to instruct the jury that willfulness was required to find him guilty of **aiding** and **abetting** the mailing of the threatening communication because the government sought conviction under 18 U.S.C. § **2(b)** (requiring willfulness) rather than § **2(a)** (for which a showing of willfulness is not required). This argument was not raised at trial; there is no reason to presume the government proceeded under § 2(b). The facts alleged in the indictment, the evidence presented at trial, and the instructions to which defendants' counsel did not object all were premised on a charge under § 2(a). Proof of willfulness was unnecessary to sustain a conviction under 18 U.S.C. § 2(a); there was no plain error in failing to instruct the jury on willfulness.[FN9] If the charge was in error, it was harmless.

> FN9. The court gave a standard aiding and abetting charge to which defendants stated no objection.

***5** Finally, Mark argues for a new trial on Count IV because the court erred in admitting evidence of Mark's state court motion to transfer venue in his divorce proceeding, in which he referred to a conflict of interest between Judge and Linda MacElree. This evidence was offered to support Mark's authorship of the threatening "blind P.S." directed to Linda MacElree. The motion, although filed three and one half years after the events giving rise to the charges against Mark, was relevant and admissible.

### III. Misjoinder

Mark and Thomas contend the charges in Counts I and IV were improperly joined. [FN10] Federal Rule of Criminal Procedure 8(a) provides that "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonious or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more transactions connected together or constituting parts of a common scheme or plan." If joinder of two or more offenses will prejudice the defendant, severance may be appropriate under Federal Rule of Criminal Procedure 14. A motion for severance pursuant to Rule 14 must be filed prior to trial. *See* Fed.R.Crim.P. 12(b)(5).

> FN10. Mark and Thomas did not move to sever based on improper joinder of defendants.

Mark and Thomas moved to sever just before jury selection on the morning trial was to commence. The court denied the motion as untimely filed. Defendants now argue their motion was timely filed and that the court could have considered their arguments during jury selection, during the evening after the first day of jury selection, or continued the trial. Trial in this action had been continued repeatedly at defendants' request and this motion was properly viewed as yet another delaying tactic because the charges in the indictment and their joinder were long known to defendants and their counsel.

Even if the court had considered the motion to sever on its merits, it would have been denied. Here, the offenses arose from separate transactions but were allegedly part of a common plan to harass and intimidate Reitelbach; the evidence of Count I would have been properly presented as part of the evidence on Count IV. Counts I and IV were properly joined. *See United States v. Fortenberry,* 914 F.2d 671, 675 (5th Cir.1990) (upholding denial of motion to sever counts of car bombing from a count of transportation of an undeclared firearm on a commercial airliner because they were "all linked by a plan of revenge against persons [involved in a custody and divorce battle] ").

Even if the counts were improperly joined, defendants must demonstrate they were unfairly prejudiced by the court's denial of their motion to sever. *See United States v. Lane,* 474 U.S. 438, 446 n. 8, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (" Improper joinder does not, in itself, violate the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."); *United States v. Gorecki,* 813 F.2d 40, 43 (3d Cir.1987) ("A claim of improper joinder under Fed.R.Crim.P. 14 must demonstrate clear and substantial prejudice.") (internal quotation marks omitted).

*6 A court has broad discretion in deciding whether to grant a defendant's severance motion. *See United States v. De Peri,* 778 F.2d 963, 983 (3d Cir.1985), *cert. denied sub nom., Murphy v. United States,* 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). A court should "balance the public interest in joint trials against the possibility of prejudice inherent in the joinder of defendants." *United States v. Eufrasio,* 935 F.2d 553, 568 (3d Cir.1991). A joint trial is not necessarily prejudicial because all evidence adduced is not germane to all counts against each defendant. *See United States v. Console,* 13 F.3d 641, 655 (3d Cir.1993), *cert. denied sub nom., Curcio v. United States,* 511 U.S. 1076, 114 S.Ct. 1660, 128 L.Ed.2d 377 (1994)).

Whether a defendant was actually prejudiced by a denial of severance depends, in part, on the ability of the jury to "compartmentalize the evidence." *United States v. Sebetich,* 776 F.2d 412, 427 (3d Cir.1985). The evidence on the counts of this indictment was sufficiently distinct [FN11] that the jury was not confused; the jury was carefully instructed that it must consider each count and each defendant separately. The jury's acquittal of Mark and Thomas on one count each shows the jury understood the court's instructions to consider the counts separately and that defendants were not unfairly prejudiced by the joinder of the charges. *See id.; United States v. Simmons,* 679 F.2d 1042, 1050-51 (3d Cir.1982).

FN11. The fact that the evidence from Count I was distinct from that offered for Count IV does not mean the evidence to establish one count was improperly admitted in the other. Much of the evidence admitted would have been admissible to establish intent and identity even if the charges had been severed.

## CONCLUSION

Defendants Mark and Thomas Mazza were both convicted of bank fraud in violation of 18 U.S.C. § 1334 (Count I), and mailing a threatening communication in violation of 18 U.S.C. § 876 and 18 U.S .C. § 2 (Count IV). There was sufficient evidence from which a reasonable jury could find defendants guilty of the crimes charged beyond a reasonable doubt. The court finds no error in the jury instructions or its evidentiary rulings. Defendants were not prejudiced by the court's denial of their motion to sever trial of the offenses charged.

## *ORDER*

AND NOW, this 20th day of December, 1999, upon consideration of defendant Mark Mazza's Post Verdict Motion, defendant Thomas Mazza's Post Trial Motions, the government's response in opposition, Mark Mazza and Thomas Mazza's reply memoranda, and in accordance with the attached Memorandum, it is ORDERED that:
1. Mark Mazza's Post Verdict Motion is DENIED.
2. Thomas Mazza's Post Trial Motions are DENIED.
3. Sentencing is scheduled for Mark Mazza on *February 8, 2000 at 2:00 p.m.*
4. Sentencing is scheduled for Thomas Mazza on *February 8, 2000 at 3:00 p.m.*

E.D.Pa.,1999.
U.S. v. Mazza
Not Reported in F.Supp.2d, 1999 WL 1244418 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:98cr00113 (Docket) (Mar. 12, 1998)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.